IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

BACKWATER PROPERTIES, LLC., and all
West Virginia residents similarly
situated, and VANCE RIVER TERMINAL,
INC., and all West Virginia residents
similarly situated,

        Plaintiffs,

v.                     //   CIVIL ACTION NO. 1:10CV103
                              (Judge Keeley)

RANGE RESOURCES-APPALACHIA, LLC,
as a wholly owned subsidiary of
RANGE RESOURCES CORP., and DUNCAN
LAND AND ENERGY, INC.,

        Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART, DENYING-IN-PART,
AND DENYING AS MOOT-IN-PART DEFENDANTS' MOTIONS TO DISMISS
[DKT. NO. 35, 38]**

## I. INTRODUCTION

During a scheduling conference, the Court **GRANTED-IN-PART,**
**DENIED-IN-PART,** and **DENIED-IN-PART AS MOOT** the motions to dismiss
filed by the defendants, Range Resources-Appalachia, LLC ("Range"),
and Duncan Land and Energy, Inc. ("Duncan") (collectively, "the
defendants"). The reasons for the Court's rulings follow.

## II. FACTUAL BACKGROUND

Two entities, Backwater Properties, LLC ("Backwater"), and
Vance River Terminal, Inc. ("Vance"), have filed a putative class
action lawsuit regarding alleged oil and natural gas leases and
related bonus contracts solicited by Range. They seek to certify
two classes of plaintiffs, Class A and Class B (collectively, "the

plaintiffs"). Backwater seeks to represent the Class A plaintiffs, landowners[1] who entered into such agreements, "but whose lease and bonus contracts were never honored . . . and who eventually signed lease contracts with either these Defendants or other similar companies but at lower prices[.]" Pls.' Amend. Compl. at p. 2, ¶ 2(b) (dkt. no. 22). Vance seeks to represent the Class B plaintiffs, landowners who entered into such agreements, "but whose lease and bonus contracts were never honored[.]" <u>Id.</u> at p. 3, ¶ 3(b). Presumably, the Class B owners did not sign leases with other companies after Range's repudiation.

In their amended complaint, the plaintiffs allege that, beginning in early 2008, as oil and natural gas reserves in the Marcellus shale formation became highly sought-after commodities, Range and Duncan began tying up oil and gas leases in West Virginia and Pennsylvania. Concerned that a competitive bidding process would have a negative impact on their ability to secure oil and gas leases at advantageous prices, Range and Duncan allegedly formulated "the Bid Rigging Plan" outlined in the amended complaint, which was intended to exclude competition and obtain leases in this market.

---

[1] The plaintiffs and putative class members may own only the properties' mineral rights and not the surface estate, but the Court refers to them as "landowners" for convenience.

A.    **The Bid Rigging Plan**

As part of the Bid Rigging Plan, Range and Duncan allegedly offered lucrative above-market leases and "bonus contracts" to landowners in exchange for their signatures. These leases paid more than the then-customary royalties and signing bonuses. The bonus contracts, in the form of a "Dear Property Owner" letter, stated that bonus payments would be "subject to a 180-day 'approval period' by management," during which "Range would purport to confirm the lessor's title to property and confirm that the correct parties did in fact sign the leases." Pls.' Amended Compl. at p. 5, ¶ 11.

Despite these representations, Range allegedly spent the approval period monitoring the spot markets for oil and natural gas in order to determine the profitability of the leases and bonus contracts submitted to the landowners. The Bid Rigging Plan anticipated that the favorable terms of the proposed leases and bonus contracts would prompt the lessor-landowners to decline offers from Range's competitors and discourage Range's competitors from submitting alternative bids and offers.

Also as a part of the alleged Bid Rigging Plan, Duncan hired representatives ("landmen") to solicit signatures from landowners. These landmen claimed to be agents of Range and represented that

Range was interested in leasing the landowners' property for oil and gas exploration. They also claimed that, upon executing leases with Range, Range would deliver or pay to the landowners a royalty equivalent to the price of 17% of the oil and gas produced at the wellhead (in contrast to the customary 12.5% royalty).

**B.    The Offers**

If a landowner expressed an interest in such a proposal, a landman would return with an "offer" from Range that included an oil and gas lease and a "separate" bonus contract for signing the lease.  These leases would run from the date of signing for minimum terms of five to seven years.  Critical to the scheme, landmen assured the landowners that the bonus contract's conditions of management approval and confirmation of good title were "perfunctory," "mere formalit[ies]."  They indicated that the landowners could "accept" these "offers" by signing the oil and gas leases and bonus contracts. Id. at pp. 6-12, ¶¶ 14, 17 and 46. Range then performed title searches, confirming that the plaintiffs owned their properties free and clear, and "internally further approved the leases," but "did not pay the bonuses or notify Plaintiffs of this internal approval of the oil and gas leases." Pls.' Amended Compl. at p. 9, ¶ 23.

Ultimately, as oil and gas prices began to plummet in the fall of 2008, Range returned the oil and gas leases to the plaintiffs, stamped "void." The plaintiffs then notified Range that it was in breach of contract and demanded their bonus payments and Range's performance of the leases. Range, however, refused to honor most of the contracts.

**C.   The Plaintiffs' Causes of Action**

Based on these allegations, the putative plaintiff classes have asserted a variety of claims, including 1) breach of the oil and gas leases, 2) breach of the bonus contracts, 3) a declaratory judgment that the statute of frauds, W. Va. Code § 36-1-3, does not render the bonus contracts or the oil and gas leases unenforceable, 4) fraud, 5) interference with prospective contract, 6) unjust enrichment, and 7) violation of § 1 of the Sherman Antitrust Act. The Class B plaintiffs also seek Range's specific performance of the oil and gas leases. Both classes have withdrawn their claim under the West Virginia Consumer Credit and Protection Act. <u>See</u> W. Va. Code § 46A-6-101 <u>et</u> <u>seq.</u>

### III.   LEGAL STANDARD

To survive a motion to dismiss based on Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations sufficient to state a plausible claim for relief. <u>Ashcroft v. Iqbal</u>, 129 S.

Ct. 1937, 1949 (2009); <u>Bell Atlantic Corp. V. Twombly</u>, 550 U.S. 544, 557 (2007). "The plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully. It requires the plaintiff to articulate facts, when adopted as true, that show that the plaintiff has stated a claim entitling him to relief, i.e., the plausibility of entitlement to relief." <u>Francis v. Giacomelli</u>, 588 F.3d 186, 193 (4th Cir. 2009)(internal quotations omitted).

Although the Court must accept factual allegations in a complaint as true, this "tenet . . . is inapplicable to legal conclusions." <u>Id.</u> at 1950. Thus, a complaint may be dismissed when the facts alleged clearly demonstrate that the plaintiff has not stated a claim and is not entitled to relief. 5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1357 at 344-45 (3d ed. 2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 129 S. Ct. at 1949 (citation omitted).

### IV. DISCUSSION

**A.  Claim for Breach of the Oil and Gas Leases and Claim for Breach of the Bonus Contracts**

According to the plaintiffs, Duncan landmen, acting as agents of Range, offered the landowners two contracts: an offer to lease their oil and gas interests, and a separate contract providing a signing bonus.  These landmen allegedly told the landowners they could accept these offers by signing the documents presented to them.

### 1.  Offers

The defendants argue that the plaintiffs' contract claims fail because, as a matter of law, Range never made offers to the plaintiffs. They further contend that the oil and gas leases and bonus contracts signed by the plaintiffs were merely offers that Range ultimately rejected.  The defendants argue that, under West Virginia law, the oil and gas leases and bonus contracts were too "indefinite" to be offers because they were not signed by Range, were subject to title verification, and, finally, had to be approved by Range's senior management.

Under West Virginia law, contract formation requires an offer, acceptance of the offer, and consideration supporting the agreement.  See <u>First National Bank v, Marietta Mfg. Co.</u>, 153

S.E.2d 172 (1967). "[M]utuality of assent is an essential element of all contracts." Id. (citing Wheeling Downs Racing Ass'n v. West Virginia Sportservice, Inc., 216 S.E.2d 234 (W. Va. 1975)). "In order for this mutuality to exist, it is necessary that there be a proposal or offer on the part of one party and an acceptance on the part of the other." Id. In other words, contract formation requires "a complete meeting of the minds on all material matters, leaving nothing for future negotiations." Allen v. Simmons, 125 S.E. 86, 88 (W. Va. 1924).

Section 24 of the Second Restatement of Contracts defines an offer as "'the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" Verizon West Virginia, Inc. v. West Virginia Bureau of Employment Programs, 586 S.E.2d 170, 205 n.11 (W. Va. 2003)(Davis, J., dissenting)((quoting Restatement (Second) of Contracts, § 24 (1981))(internal citation and quotation marks omitted)). "An offer must be certain in its essential terms to create a power of acceptance." Charbonnages de France v. Smith, 597 F.2d 406, 417 (4th Cir. 1979)(construing West Virginia law).

Generally, in West Virginia "'the existence of a contract is a question of fact for the jury.'" Ruckdeschel v. Falcon Drilling

Co., L.L.C., 693 S.E.2d 815, 820 (W. Va. 2010)(quoting Syl. Pt. 4, Cook v. Heck's Inc., 342 S.E.2d 453, 457 (W. Va. 1986)). What constitutes a contract, however, and the application of an unambiguous writing, present questions of law. See Croft v. TBR, Inc., 664 S.E.2d 109, 111 (W. Va. 2008)(citations omitted); Williams v. Precision Coil, Inc., 459 S.E.2d 329, 339 n. 18 (W. Va. 1995).

At this early stage of the litigation, the Court cannot fully evaluate the terms of any agreements between the parties. Nevertheless, when the allegations of oral representations in the plaintiffs' amended complaint are considered in pari materia with the leases and bonus contracts, they support plausible claims for breach of two separate contracts. Significantly, the amended complaint alleges that the oral representations of the landmen, including assurances that management approval and title verification were perfunctory, and that the plaintiffs could accept the offers merely by their signatures, were a part of the offers they accepted from Range. It further alleges that Range satisfied the conditions of management approval and title verification. See Pls.' Amended Compl. at p. 9, ¶ 23.

>    2.   **Escape Provisions of the Oil and Gas Leases and Claim for
>         Lost Royalties**

The defendants also seek to dismiss the plaintiffs' claim for lost royalties based on the breach of contract. They argue that the proposed leases explicitly provide that Range has no obligation to extract oil and gas from the land, and that such express disclaimer precludes any implication otherwise. Given that the precise terms of any such agreements have yet to be determined, the Court cannot fully evaluate the merits of this argument at this time. For the same reason, it also declines to dismiss the plaintiffs' claim for lost royalties as speculative.

**B.   Claim for a Declaratory Judgment**

Count Three of the amended complaint seeks a declaration that a) the Bonus Contracts are not contracts for more than one year for the sale or lease of real property, and b) that the statute of frauds does not render the bonus contracts or the leases unenforceable. The defendants argue that the oil and gas leases are subject to the statute of frauds because they are not signed by Range and constitute leases for terms of five to seven years. They further argue that the bonus contracts are intrinsically related to these leases because 1) the letters and leases were presented to the plaintiffs at the same time; 2) the bonus payments were

conditioned upon approval by Range's management of the proposed leases; 3) the bonus contracts are intrinsically related to the proposed leases; 4) the bonus payments were substitutes for part of the consideration; and 5) the plaintiffs seek bonus payments as part of their damages for the alleged breaches of the oil and gas leases. Thus, from the defendants' perspective, the leases and bonus contracts constitute a single agreement, and the lack of Range's signature on the bonus contracts or leases prevents enforcement of any agreement.

The plaintiffs, on the other hand, argue that the statute of frauds raises no bar to enforcement of the bonus contracts because they are separate agreements, and not part of the oil and gas leases. Moreover, they contend that, as the bonus contracts call for payments to be made within 90-180 days of the lease's execution, they are not contracts for more than one year.

Under West Virginia law, "the underlying purpose of the statute of frauds is 'to prevent the fraudulent enforcement of unmade contracts, not the legitimate enforcement of contracts that were in fact made.'" Heartland, L.L.C. v. McIntosh Racing Stable, L.L.C., 632 S.E.2d 296, 305 (W. Va. 2006) (quoting Timberlake v. Heflin, 379 S.E.2d 149, 153 (W. Va. 1989)). As the Supreme Court of Appeals of West Virginia has observed,

> [t]he Statute of Frauds was not enacted to afford persons a means of evading just obligations; nor was it intended to supply a cloak of immunity to hedging litigants lacking integrity; nor was it adopted to enable defendants to interpose the Statute to a contract fairly, and admittedly, made. In brief, the Statute "was intended to guard against the perils of perjury and error in the spoken word."

Id. (quoting 10 Williston on Contracts § 29.4 at 437-38 (internal citation omitted in original)). The provisions of W. Va. Code § 36-1-3, therefore, operate as a procedural bar to the enforcement of certain oral contracts unless the statute's conditions are met. Moreover, "'[t]he operation of the statute of frauds goes only to the remedy; it does not render the contract void.'" Heflin, 379 S.E.2d at 153 (quoting Ross v. Midelburg, 42 S.E.2d 185, 193 (W. Va. 1947)).

West Virginia recognizes several exceptions to the statute of frauds. Of significance, here, one of the exceptions estops a party to an oral agreement from invoking the statute of frauds in situations involving fraud and partial performance of a contract. Bennett v. Charles Corp., 226 S.E.2d 559, 563 (W. Va. 1976).

Here, the plaintiffs have adequately alleged two separate breach of contract claims, but it is too early in the case to determine whether the leases and bonus contracts form two separate contracts or a single agreement. Furthermore, as discussed later

in this opinion, the plaintiffs have adequately alleged that Range employed fraudulent means when soliciting their signatures. Therefore, under <u>Bennett</u>, the fraud exception to the statute of frauds may apply. 226 S.E.2d at 563. The Court, consequently, concludes that the plaintiffs have stated a plausible declaratory judgment claim, the merits of which must be developed through discovery.

**C.    Claim for Specific Performance**

The Class B plaintiffs seek specific performance of the oil and gas leases. The defendants seek to dismiss this claim on the basis that specific performance is an extraordinary remedy not generally available to a plaintiff-lessor seeking to compel the development of oil and gas interests. The defendants also assert that the terms of the proposed leases permit Range to drill or not drill, and that it cannot be forced to perform under the terms of those leases.

The plaintiffs contend they have adequately alleged the predicates for obtaining specific performance, that they seek only to compel Range to exploit the land in good faith, and that the Supreme Court of Appeals of West Virginia has previously recognized specific performance as an appropriate remedy within the context of a coal lease. See <u>Blair v. Dickinson</u>, 54 S.E.2d 828 (1949) (quoting

13

Oberman, Trustee v. Red Rock Fuel Company, et al., 99 S.E. 66 (W. Va. 1919)).   At this early stage of litigation where it is uncertain whether the parties had one or more agreements, and what the terms and scope of such agreements may have been, the Court will reserve the question of whether the remedy of specific performance is available to the plaintiffs.

**D.    Claim for Fraud**

The amended complaint alleges that landmen told the plaintiffs they could accept offers to enter leasing agreements and separate bonus contracts by signing documents provided by Range, and that these statements were false when made because Range never intended to conclude any bargains.   The defendants, however, argue as a matter of law that the plaintiffs' fraud claim fails because 1) it is barred by the gist of the action doctrine; 2) it is inadequately pleaded; and 3) the plaintiffs' reliance on oral representations was unjustified as a matter of law.

**1.    The Gist of the Action Doctrine**

Under the "gist of the action" doctrine, a tort claim arising from a breach of contract may be pursued only if "'the action in tort would arise independent of the existence of the contract.'" Secure US, Inc. v. Idearc Media Corp., No. 1:08CV190, 2008 WL 5378319, at *3-4 (N.D.W. Va. 2008) (quoting Syl. Pt. 9, Lockhart v.

Airco Heating & Cooling, 567 S.E.2d 619 (W. Va. 2002)).  Under West

Virginia law, a plaintiff may pursue a fraud claim by establishing:

> "(1) that the act claimed to be fraudulent was
> the act of the defendant or induced by him;
> (2) that it was material and false; that
> plaintiff relied on it and was justified under
> the circumstances in relying upon it; and (3)
> that he was damaged because he relied on it."

Syl. Pt. 1, Lengyel v. Lint, 280 S.E.2d 66, 69 (W. Va. 1981)

(quoting Horton v. Tyree, 139 S.E. 737 (W. Va. 1927)). Moreover,

pursuant to a longstanding principle of West Virginia law, a

plaintiff cannot predicate a fraud claim on another party's failure

to perform a promise, and such a claim is only available when the

other party made "'a false assertion in regard to some existing

matter by which a party is induced to part with his money or

property.'"  Legg v. Johnson, Simmerman & Broughton, 576 S.E.2d

532, 539 (W. Va. 2002) (quoting Syl. pt. 1, Love v. Teeter, 24 W.

Va. 741 (1884)).

Here, the amended complaint alleges that landmen representing

Range falsely told the plaintiffs they could finalize agreements

with Range simply by providing their signatures.  Based on these

false representations, the plaintiffs claim they did not consider

later offers from other oil and gas companies.  They contend their

claim of fraud is independent of their breach of contract claim

because the asserted harm is the loss of a contractual opportunity

with another entity, not the loss of a contractual bargain with Range.

As pled, the plaintiffs' fraud claim does not rise or fall on whether their cause of action sounds in contract, but rather provides a separate and distinct legal theory of liability. Thus, even if the Court eventually concludes that no contract existed between Range and the plaintiffs, such a conclusion would not preclude a finding that Range, Duncan, or both of them, misled the plaintiffs into believing they had a binding agreement and should be held liable for fraud. Therefore, the gist of the action doctrine does not bar such a claim.

### 2. The Pleading Standards for Fraud Claims

The defendants also argue that the plaintiffs' fraud claim fails to satisfy the pleading requirements of Fed. R. Civ. P. 9(b) because it does not allege who made the fraudulent statements and when such representations were made. The defendants also contend that the plaintiffs' fraud claim is based on "future occurrences," not statements that were materially false when made.

To survive a motion to dismiss, a fraud claim must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[T]he 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and

contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" <u>Harrison v. Westinghouse Savannah River Co.</u>, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure: Civil § 1297, at 590 (2d ed. 1990)).

The amended complaint in this case satisfies these pleading requirements; it alleges the "who" (Range landmen), the "when" (July, August, and September of 2008), and the "where" (the plaintiffs' properties). As to what was said, it alleges that landmen told them they could conclude their bargains by signing the leases and bonus contracts, when in fact the landmen knew such representations were untrue, allowing Range to gain 90-180 day options to lease the plaintiffs' land. Thus, the amended complaint meets Rule 9(b)'s requirement that a fraud claim be pled with particularity.

### 3. Justifiability of the Plaintiffs' Reliance

Finally, the defendants argue that, as a matter of law, the plaintiffs' reliance on any oral representations was unjustified because the written documents provided by the landmen directly contradicted their alleged oral representations. The plaintiffs, however, assert that this argument is premature, and that, at this

early stage of the litigation, they need only state a plausible claim for relief.

The plaintiffs are correct. Even acknowledging that critical issues, such as what exactly the landmen told the plaintiffs, and whether reliance on such statements was reasonable, have yet to be developed, the Court concludes that the plaintiffs have met their initial pleading burden under <u>Iqbal</u>.

**E.   Claim for Interference with Prospective Contract**

The defendants also argue that the claim in the amended complaint for interference with prospective contract fails because it, too, is barred by the gist of the action doctrine.  They further argue that the plaintiffs have failed to adequately plead an identifiable contract or expectation.

**1.   The Gist of the Action Doctrine**

As discussed earlier, the gist of the action doctrine permits a plaintiff to pursue a tort claim related to a contractual claim only where the tort claim arises independently of the contract. <u>See</u> <u>Lockhart</u>, 567 S.E.2d 619.  In West Virginia, to state a claim for intentional interference with a prospective business contract, "[a] plaintiff must prove:

> (1) existence of a contractual or business
> relationship or expectancy . . . ; (2) an

> intentional act of interference by a party
> outside that relationship or expectancy . . .;
> (3) proof that the interference caused the
> harm sustained; and (4) damages.

Torbett v. Wheeling Dollar Sav. & Trust Co., 314 S.E.2d 166, 173 (W. Va. 1983).

Here, the amended complaint alleges that the basis of the claim for intentional interference with prospective contract is the false representations made by Range's landmen, not any contract between the parties. Such allegations constitute a claim for relief that is independent of any contract into which the parties may or may not have entered. Thus, the gist of the action doctrine does not bar the plaintiffs' claim for tortious interference with prospective contract.

### 2. The Adequacy of the Pleadings

The amended complaint also adequately sets forth the elements of a claim of interference with prospective contact. First, it asserts that the plaintiffs received bona fide offers to lease their gas rights from other companies after signing contracts with Range. It then alleges that the landmen's statements and reassurances concerning the solid nature of the Range deals prevented them from accepting these offers, thus causing them to lose the opportunity to profit from their gas rights at the height of the market.

If true, these facts are sufficient to support a recovery for the tort of interference with prospective contract in West Virginia, which "recognizes a cause of action based on tortious interference with contractual relations." <u>Wood County Airport Authority v. Crown Airways, Inc.</u>, 919 F. Supp. 960, 968 (S.D.W. Va. 1996) (citing <u>Torbett</u>, 314 S.E.2d at 171). The tort may be based on interference with either an existing or a prospective relationship. <u>Id.</u> (quoting Restatement (Second) of Torts § 766B (1979)).

The amended complaint alleges that, after entering agreements with Range, the plaintiffs received later offers from Chesapeake, CNX, and other companies, and that false representations by the landmen led them to believe they could not accept such offers. Allegations relating to the Bid Rigging Plan sufficiently establish that, if true, Range's interference with such prospective opportunities was intentional and continued throughout the time when the plaintiffs received other offers. The plaintiffs therefore have adequately pleaded a claim for intentional interference with prospective contracts.

**F.    Claim for Unjust Enrichment**

The defendants argue that the plaintiffs' claim for unjust enrichment fails as a matter of law because 1) the plaintiffs did not confer a benefit on Range; and 2) even if the plaintiffs did

confer a benefit, Range paid valuable consideration for it (i.e. $1.00). The plaintiffs contend that they have adequately stated a claim for unjust enrichment because they conferred 90-180 day options on Range for which they received no compensation. They further assert that Range's initial consideration of $1.00 was inadequate, but that any dispute as to its adequacy should be determined at a later time.

Under West Virginia law,

> "[u]njust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belong to another . . . . The benefit may be an interest in money, land, chattels, or choses in action; beneficial services conferred; satisfaction of a debt or duty owed by him; or anything which adds to his security or advantage."

Dunlap v. Hinkle, 317 S.E.2d 508, 512 (W. Va. 1984) (quoting Commercial Fixtures and Furnishings, Inc. v. Adams, 564 P.2d 773, 776 (Utah 1977)). The remedy for unjust enrichment is restitution. See LaPosta Oldsmobile, Inc. v. General Motors Corp., 426 F. Supp.2d 346, 356 (N.D.W. Va. 2006) (citing Restatement (First) of Restitution § 1 (1988)). West Virginia law also recognizes that a real estate option may have value, which consists of

> a continuing offer to sell, which may, or may not, within the time specified, at the election of the optionee, be accepted. The owner parts with his right to sell to another for such time, and gives to the optionee this

> exclusive privilege. It is the right of election to purchase, which has been bought and paid for, and which forms the basis of the contract between the parties.

Tate v. Wood, 289 S.E.2d 432, 434 (W. Va. 1982).

Pursuant to these standards, the plaintiffs have adequately pleaded a claim for unjust enrichment. Furthermore, factual development is necessary to determine whether Range obtained a benefit, or, if it did, whether it obtained such benefit unjustly. Dismissing the plaintiffs' claim for unjust enrichment at this time therefore would be premature.

**G.    Claim for Violations of the Sherman Antitrust Act**

The defendants argue that the plaintiffs' antitrust claim fails as a matter of law because it fails to allege an antitrust contract, combination or conspiracy, and also how Range's actions created an unreasonable restraint on trade. In their response, the plaintiffs contend that they have adequately stated a claim under § 1 of the Sherman Antitrust Act based on their allegation that Range and Duncan were competitors and conspirators. They also assert that, as pled, the Bid Rigging Plan constituted illegal per se horizontal price-fixing because it prevented the plaintiffs from receiving the highest bids possible, and also prevented Range's competitors from bidding on their properties.

"'The purpose of antitrust law, at least as articulated in the modern cases, is to protect the competitive process as a means of promoting economic efficiency.'" <u>Valuepest.com v. Bayer Corporation</u>, 561 F.3d 282, 290 (4th Cir. 2009) (quoting <u>Morrison v. Murray Biscuit Co.</u>, 797 F.2d 1430, 1437 (7th Cir. 1986)). To state a claim under 15 U.S.C. § 1, a plaintiff must establish two elements: "(1) an agreement between at least two legally distinct persons or entities; and (2) that the agreement imposed an unreasonable restraint on trade." <u>Patel v. Scotland Memorial Hosp.</u>, 91 F.3d 132, 1996 WL 38920, at *2 (4th Cir. 1996) (table case) (citing <u>Estate Constr. Co. v. Miller & Smith Holding Co.</u>, 14 F.3d 213, 220-21 (4th Cir. 1994)).

Under the first element, an agent and principal cannot form a "'contract, combination' or 'conspiracy,'" in violation of the Sherman Antitrust Act. <u>Valuepest.com</u>, 561 F.3d at 288. "[C]oncerted activity susceptible to sanction by [15 U.S.C. § 1] is activity in which multiple parties join their resources, rights, or economic power together in order to achieve an outcome that, but for the concert, would naturally be frustrated by their competing interests (by way of profit-maximizing choices).'" <u>Dickson v. Microsoft Corporation</u>, 309 F.3d 193, 204 (4th Cir. 2002) (quoting <u>Virginia Vermiculite, Ltd. v. HGSI</u>, 307 F.3d 277, 282 (4th Cir. 2002)).

In the seminal case of <u>Bell Atlantic Corp. v. Twombly</u>, the Supreme Court of the United States specifically addressed whether a complaint adequately pleaded a claim under § 1 of the Sherman Act, and held that the complaint contained insufficient allegations of antitrust violations to nudge the claims "across the line from conceivable to plausible." 550 U.S. at 570. Accordingly, those claims failed as a matter of law and were subject to dismissal. <u>Id.</u>

According to the plaintiffs, their amended complaint adequately alleges that Duncan was Range's competitor. That contention, however, is belied by numerous other allegations in the amended complaint that Duncan served as Range's agent. Thus, even when viewed in the light most favorable to the plaintiffs, the only reasonable reading of the amended complaint is that Duncan was an agent of Range, and not its competitor. The plaintiffs have produced no plausible allegations or argument to the contrary, and their antitrust claim, therefore, must be dismissed. <u>See</u> <u>Twombly</u>, 550 U.S. at 570.

## H. Claim for Violation of W. Va. Code § 46A-6-101 <u>et</u> <u>seq.</u>

As noted earlier, the plaintiffs have withdrawn their claim for violation of W. Va. Code § 46-6-101 <u>et seq.</u> <u>See</u> <u>Cather, et al. v. Seneca-Upshur Petroleum, Inc., et al.</u>, No. 1:09CV139, 2010 WL 3271965, at *6-*8 (N.D.W. Va. Aug. 18, 2010) (holding that lessors

24

of natural gas are not "consumers" protected by the West Virginia Consumer Credit and Protection Act).  The Court need not discuss this claim further and denies as moot the defendants' motions to dismiss this claim.

### V. CONCLUSION

For the reasons discussed, the Court **GRANTS-IN-PART, DENIES-IN-PART,** and **DENIES-IN-PART AS MOOT** the motions to dismiss filed by Range and Duncan (dkt. nos. 35, 38). Specifically it:

• **GRANTS** the defendants' motions to dismiss the plaintiffs' Sherman Antitrust claim;

• **DENIES** the defendants' motions to dismiss the plaintiffs' claims for breach of the oil and gas leases, breach of the bonus contracts, declaratory judgment, specific performance, fraud, interference with prospective contract, and unjust enrichment; and

• **DENIES AS MOOT** the defendants' motions to dismiss the plaintiffs claim for violation of W. Va. Code § 46A-6-101 et seq.

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Order to counsel of record.

DATED: May 5, 2011.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE